JOHN S. TURRILL *vs.* LEVI·G. NORTHROP AND OTHERS.

A devise was to *G* and his heirs forever; the will proceeding as follows:— "It is my will notwithstanding, that if *G* shall die without issue who can inherit, the estate shall go in equal shares to my brothers and sisters and their representatives." Held that *G* took an estate tail.

[Argued May 22d—decided September 7th, 1883.]

SUIT for a foreclosure; brought to the District Court of the county of Litchfield. Facts found and case reserved for advice. The case is sufficiently stated in the opinion.

*W. F. Taylor* and *J. S. Turrill*, for the plaintiff.

*E. W. Seymour* and *L. D. Brewster*, for the defendants.

PARDEE, J. Friend G. Northrop died in 1832, leaving a will, the third and fourth clauses of which were as follows:—

"3d. I give to Anna Hurlburt, who now lives in my house, near Stephen Miles, Jr., the use of the house where she now lives, and garden, and so much of the barn as shall be necessary for the keeping of one cow and ten sheep; and it is my will that the said Anna have the privilege of pasturing a cow and ten sheep, and of cutting hay sufficient to keep the same through winter upon the land adjoining the said house where the said Anna lives, said use and privilege to continue during her life, or until she shall marry or have a child, or a child by a different man or father than that she now has; also it is my will that the said Anna have

the privilege of cutting wood on my land at Bound Hill, so-called, for one fire for her own use only, for the same term of time, and upon the same terms as the use and privilege last above mentioned; and it is my will that the said Anna at my decease have one cow and ten sheep out of my estate, and if the child which the said Anna now has, called Gad, dies without issue who can inherit, before the said Anna dies, it is my will that the said Anna shall have the use of all the land adjoining the house where she now lives, until her death or until she marries or has a child or children by a different father or man than the one which she now has, being about thirty-two acres.

 "4th. I give, devise and bequeath to Gad, the son of Anna Hurlburt above named, whom I adopt as my child and heir, and give him the name of Gad Northrop, all my real and personal estate which I shall leave at my decease, including what is herein devised and bequeathed, subject to such devises and bequests, to him and his heirs forever. It is my will, notwithstanding, that if the said Gad shall die without issue who can inherit, that all the real and personal estate given to him in this will shall go to, and be distributed, subject to the other devises and bequests herein, in equal proportions and shares to my brothers and sisters and their legal representatives, except so much of my land at Still River as was formerly received by my wife from the estate of her father and which I now own, which it is my will shall go to my wife and her heirs forever in case the said Gad dies without issue as aforesaid."

Anna Hurlburt died in 1859. Gad G. Northrop was her illegitimate son. He went into possession of that part of Friend G. Northrop's estate which was not occupied by Anna Hurlburt; in 1850 he married; a son, Levi G. Northrop, was born in lawful wedlock in 1856. In 1873 Gad G. Northrop mortgaged part of the estate to the plaintiff; in 1875 he assigned his interest therein to trustees in insolvency, and died in 1878 intestate, his wife and son surviving. The latter is now in possession of the premises, claiming title under the will of Friend G. Northrop, and, alone of those

made defendants, appears. The advice of this court is asked as to the judgment to be rendered.

The plaintiff claims that under the will Gad G. Northrop took a fee simple defeasible in the event of his death without issue living at the time of his death who could inherit; and that by the birth of a son in lawful wedlock in 1856 before the death of Gad G. Northrop, said son surviving, the estate became an indefeasible fee simple in Gad G. Northrop and was such at the date of the mortgage.

The defendant, Levi G. Northrop, claims that Gad G. Northrop took no more than an estate tail, and that the fee is now in himself under the will.

In both of the recited paragraphs of the will the testator makes provision for the disposition of his estate contingent upon the event of the death of Gad G. Northrop "without issue who can inherit;" thus making plain his desire, not merely that children should be born in lawful wedlock and put an indefeasible title in Gad, but that if they should survive him their power to inherit should operate upon his estate; that upon them the fee should first rest; and this beyond the possibility of prevention by their father.

In *Nightingale* v. *Burritt,* 15 Pick., 104, SHAW, C. J., says:—"If therefore an estate is devised to *A* and his heirs, which is a fee, and it is afterward provided that if *A dies without issue,* then over, this reduces it to an estate tail by implication. The law implies that by *heirs* in the first devise was intended *heirs of the body,* and it also implies from the proviso that it was not the intent of the testator to give the estate over and away from the issue of the first devisee, but on the contrary that such issue should take after the first devise."

It is quite certain also that upon the happening of a named event the testator intended to subject thirty-two acres, parcel of his estate, to the use of Anna Hurlburt for life; and this too beyond the power of Gad to prevent. This result would not be secured if the title became at any time indefeasible in him.

Again, to the mind of the testator the words "without

issue who can inherit," applied to Gad Northrop, undoubtedly had the same meaning as would have the words " without heirs of his body lawfully begotten ; " and the devise is to be interpreted as if the last had been used in place of the former. And it is said in 2 Jarman on Wills, (4th Am. ed.,) top page 174, that " where a testator in the first instance devises lands to a person and his heirs, and then proceeds to devise over the property in terms which show that he used the word heirs in the prior devise in the restricted sense of heirs of the body, such devise of course confers only an estate tail, the effect being the same as if the latter expression had been originally employed. Thus, if lands are devised to A and his heirs, and if he shall die without heirs of his body, then over to another, such devise vests in the devisee an estate tail." The illustration of Mr. Jarman is the case before us, and the rule prevails in this jurisdiction.

In 1st Swift's Revised Digest, top page 146, it is said that " though a devise to a man and his heirs gives him an estate in fee simple, yet if the word heirs is qualified by any subsequent words which show the intent of the testator to restrain them to the heirs of the body of the devisee, the devise will create only an estate tail. Where a man devised his freehold messuage to his son *P. B.* and his heirs forever, on condition that he should pay his son *W. B.* £50, and in case any of his children should die without issue then to his and their right heirs forever, it was holden that *P. B.* took an estate tail; for if a man devises an estate to *A* and his heirs, and afterwards gives his estate to another in case *A* dies without issue, the subsequent words reduce *A's* estate to an estate tail, and restrain the general word *heirs* to signify only *heirs of the body;* and it is the same as a devise to *A* and the heirs of his body, and in default of issue to another."

In *Dart* v. *Dart,* 7 Conn., 250, the devise was of " my farm * * to my son Roger, his heirs and assigns forever; " the will proceeding as follows :—" My will further is that my sons shall not either of them sell or dispose of the land * * from their lawful male issue ; and in case either of

my sons should die without lawful male issue, in such case his land hereby given shall revert and become the estate of my surviving sons or their male issue." The court said:—
" The testator has used expressions which have always been understood to create an estate tail. In the first place he created an estate of inheritance in his sons. He then forbade their selling it away from their lawful male issue. And lastly he provided that if either of his sons should die without such issue, his land should revert, and become the estate of his surviving sons or their male issue. This completed the entailment in perpetuity, according to his views; though not according to modern decisions."

In *Williams* v. *McCall*, 12 Conn., 328, the devise was to " my son Andrew V. Williams all the land I have on the easterly side of the road   *   *   if my said son Andrew shall have a lawful heir; but if he should have none then after his decease to be divided between his brothers and sisters." After the decease of the testator a child was born to Andrew which died. After the death of the child Andrew conveyed the land as an estate in fee simple. The court said:—" In England it has been decided, in a great number of cases, that if an estate be devised to a man and his heirs, and if he die without leaving heirs then to his brother, or any person who may be an heir, the word *heirs* shall be construed to mean *heirs of the body*, and the devise shall operate to convey an estate tail. The same doctrine has been recognized by this court. *Hudson* v. *Wadsworth*, 8 Conn., 348. In this case, if Andrew had no heir, the lands devised to him were to go to his brothers and sisters. The intent of the testator manifestly was that, if he died without heirs of his body, the land should go to the testator's other children. The construction therefore to be given to the will is, that it created an estate tail in Andrew, with remainder to his brothers and sisters. This construction is in conformity with established principles of law. Andrew, taking only an estate tail, had no power by any conveyance of his to defeat the estate of those in remainder."

In *Hudson* v. *Wadsworth*, 8 Conn., 348, the devise was

to Jonathan T. Hudson, the will proceeding as follows:—
" And my will further is that, in case of the decease of my
above named grandson, Jonathan T. Hudson, without law-
ful heirs of his body born in lawful wedlock, then the estate
given to him in and by this will shall be equally divided
between my two daughters." The court said that by the
first clause "an estate in fee simple passes, if the force of
the expression is not restrained by something subsequent.
* * By the clause of the devise immediately succeeding
the one commented on, that in case of the decease of the
said Hudson without lawful heirs of his body, the estate
given to him shall be equally divided between the two
daughters of the testator, the former clause of the devise is
limited, and Hudson took an estate tail by implication.
The estate was not explicitly to him and to the heirs of his
body; but as the limitation over was on the event of his
dying without such heirs, it is the established construc-
tion of such a devise that the heirs general were not
intended to succeed to the inheritance. Although the term
*heirs* is generally *nomen collectivum* and a word of *limitation,*
yet if there appears any clause or circumstance in a will
showing an intention to use it as a word of *purchase* it shall
receive this construction. * * Hence the estate devised
was in tail, that is to Hudson and the heirs of his body
only." And in a subsequent portion of the same opinion
the court says:—"What then was intended by the expres-
sion 'in case of the decease of my said grandson, J. T.
Hudson, without lawful heirs of his body?' Did it refer
to an indefinite failure of issue at any time thereafter; or
J. T. Hudson's having issue at or before his death? It is
not a little surprising that any person should entertain the
opinion that an indefinite failure of issue was intended."

In *Comstock* v. *Comstock,* 23 Conn., 349, the devise was to
" my son Asa Comstock, after the term given my wife shall
expire, all my real estate not otherwise disposed of in this
will; * * and should he not have heirs of his body,
then said real estate after his decease to go to my heirs at
law." The court said:—" The estate of the defendant

under his father's will is an estate tail and nothing more ; his lineal heirs only being entitled to take under and through him, and he never having any greater than a life estate to convey. To this point it cannot be necessary to cite authorities, for the books are full of them."

It is true that in *Bullock* v. *Seymour*, 33 Conn., 289, where the devise was " to my son William H. Seymour, and to his heirs forever, * * and in case my son William H. Seymour should die without children or their legal representatives, then my estate shall be divided among my legal heirs," the court held it a defeasible fee simple, saying that " the testator doubtless had in mind the possibility that his son might die without ever having had children, and provided for that contingency by devising the property over, in that event, to his legal heirs. And we think it is equally clear that he intended, in case his son should have children, that the fee should vest absolutely in him. * * We think, therefore, that this construction is in harmony with the other provisions of the will and with all the circumstances of the case and best effectuates the general intention of the testator." The court here puts its decision upon the manifest intent of the testator, which it very properly makes the law of the case. We therefore do not regard our present decision as conflicting with the decision of the court in that case.

The District Court is advised to dismiss the complaint.

In this opinion the other judges concurred.