## CARRIE E. RUDKIN vs. PHILIP C. RAND.

First Judicial District, Hartford, May Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A devise to one for life with remainder in fee to the life tenant's "descendants," was in violation of the statute against perpetuities which was in existence for many years until its repeal in 1895.

The conditional fee of the English common law has never been recognized in this State, nor have we ever adopted the English statute *de donis conditionalibus*.

Words appropriate to the creation of an estate tail vest a fee simple in the issue of the first donee in tail; such issue taking no interest in the land during the life of the donee, and the latter having no alienable interest except that for his own life. This principle was affirmed by statutory enactment in 1784, and is now expressed in § 4027 of the General Statutes.

Estates tail may be created in this State, and by language sufficient to create them at common law; but the legal character of such estates is that prescribed and defined by our ancient rule and confirming statute.

While it is essential to the creation of an estate tail by deed, that the word "heirs" should be used, this is not necessary with respect to a devise, where the intent of the testator is the controlling fact.

The heirs or issue of a donee in tail take by inheritance only.

In the present case a testatrix devised the residue of her property to the

eldest of four nephews, all of whom are still living, on condition that
he make his home in the town in which the property was located,
and provided that if he failed to do so, or if he died leaving no
descendant or descendants, then the property should go to the
next younger nephew upon the same terms and conditions, and
that if he failed to meet the foregoing requirements, or if he died
leaving no descendant or descendants, then it should go to the
third and fourth nephews in succession, prescribing the same
terms and conditions for each. The will then directed that if any
nephew left a descendant or descendants the property should be
given to him or them, otherwise it should be divided among "the
heirs" of certain named persons. *Held* that it was clear the testa-
trix believed and understood that she herself was making a direct
gift to the descendants of her nephews, in the contingency ex-
pressed, and not a mere provision for a succession in perpetuity by
inheritance to what had been given to an ancestor; in other words,
that the designated descendants were her beneficiaries by her own
act, taking a remainder by purchase, and not by inheritance from
their ancestors; and therefore no estate tail had been created by the
will.

Argued May 5th—decided June 10th, 1914.

ACTION to recover damages for an alleged breach of a
covenant of seizin in fee simple, brought to and reserved
by the Superior Court in Middlesex County, *Case, J.,*
upon an agreed statement of facts, for the advice of
this court.

Lucia A. Rand died in 1892, seized and possessed in
fee simple of the real estate described in the complaint.
This property is included in that which she disposed of
by the thirteenth paragraph of her will, duly probated,
which reads as follows:—

"All the rest and residue of my estate, Bank Stock,
Railroad Stock, notes and mortgages (if any) all the real
estate on Mount Vernon, and Washington Streets, all
the real estate I own at Rockfall, Connecticut, with the
Mill, machinery and capital invested there, I give, de-
vise and bequeath to my nephew Philip C. Rand with
the proviso and on condition that he makes his home in
Middletown aforesaid, or at Rockfall, aforesaid, to
care for the property: but if he fails to do so or if he

dies leaving no descendant or descendants, then all the property by this article of my will given to him shall be given to C. M. W. Rand, second son of my brother upon the same proviso and condition: but if he fails to meet the above requirements, or if he dies leaving no descendant or descendants, then it shall be given to Samuel the third son, but if he fails to meet the above requirements or dies leaving no descendant or descendants then it shall be given to Robert the fourth son: but if he fails to meet the above requirements or dies leaving no descendant or descendants the said property shall be divided among the heirs of my brother D. C. Rand, the heirs of Jane S. Smith and the heirs of Catherine H. Carnahan: provided always that if any son leaves a descendant, the said property shall be given to such descendant or descendants."

The five lines of the original draft immediately following were erased before execution, to wit: "upon the same proviso and condition, and if such descendant fail to meet the said requirements, and shall die without any descendant, the next son as hereinbefore provided shall take, and so on."

Upon Mrs. Rand's death the defendant, being the first of her nephews named in said paragraph, for the purpose of fulfilling the condition therein as to home, and thereby vesting in himself such title to said property as might thereby vest in him under said paragraph, came to Middletown to care for the property and to make his home there. He thereafter continued a resident of Middletown, living upon real estate included in said thirteenth paragraph, and was thereafter continuously in possession and control of such real estate, including that in question in this action, until October 31st, 1905, when he conveyed the same to the plaintiff by warranty deed. He has ever since continued in possession of all of the balance of said real estate.

Prior to the execution and delivery of his deed to the plaintiff, the defendant received from his three brothers named in said paragraph, all the heirs at law of Mrs. Rand, all the heirs at law of her brother D. C. Rand and of Jane S. Smith, both then deceased, and from Catherine H. Carnahan, then living but since deceased, and all of her children, who proved to be her heirs at law at her death, a quitclaim deed purporting to convey to him all the right, title and interest in said premises which each of said persons respectively had, ought to have, or might thereafter have. At the time of the execution of this quitclaim deed, none of the grantors therein resided in either Middletown or Rockfall, and no one of them has ever resided in either of those places, or made any claim of a present or prospective interest in said property.

*Bertrand E. Spencer*, for the plaintiff.

*Wesley U. Pearne*, for the defendant.

PRENTICE, C. J. The defendant is the first named of the four nephews of Lucia A. Rand who were made beneficiaries under the thirteenth paragraph of her will. At the time he gave to the plaintiff the deed in question, he had acquired all the right, title and interest which his three brothers, the heirs at law of the testatrix, the heirs at law of D. C. Rand and Jane S. Smith, both deceased, and Catherine H. Carnahan, now deceased, and her heirs at law, had, or ought to have, or might thereafter have, in or to the land conveyed. If his conveyance failed to give a good title to the plaintiff, it must have been for the reason that some outstanding interest or possible future interest was not gathered up in the quitclaim to him. Those conveyed covered the entire field of possible interest, as well as

some impossible, save that which is occupied by the surviving descendants of the four nephews. These nephews are still living. Their surviving descendants cannot, therefore, be known, and there has been no attempt to acquire any interest that their prospective surviving issue might have. If the terms of Mrs. Rand's will are such that the surviving descendants of her nephews, as they shall prove to be, or some of them, may thereunder have an interest in the property in question, then the plaintiff's title is not the good, indefeasible title in fee simple which the defendant warranted that he gave.

In so far as the testatrix attempted to make a devise in favor of these surviving descendants, the provisions of her will to that end are nugatory, as being in contravention of the statute against perpetuities in force when the testatrix died. In the capacity of heirs there could have been no present interest or future possibility of interest in these descendants not subject to alienation by the ancestor except through the operation of an entail. Counsel for the plaintiff concedes that this is so. His fundamental contention is that the testatrix intended to, and did, create a fee tail in one of the four nephews. Upon this proposition, followed by the unquestionable secondary one that the issue of a tenant in tail has no strict legal right in the entailed estate until after his death and nothing which they can convey, his entire argument is founded, as it needs must be. *Comstock* v. *Gay*, 51 Conn. 45, 62; *St. John* v. *Dann*, 66 Conn. 401, 408, 34 Atl. 110.

In this State we have never recognized the conditional fee of the English common law, nor adopted into our law the statute *de donis conditionalibus*. From the earliest times it has been held in this jurisdiction that words appropriate to the creation of an estate tail vest a fee simple in the issue of the first donee in tail; such issue taking no interest in the land during the life of the

donee, and the donee having no alienable interest beyond a life interest. 1 Swift's Digest, 79; *Hamilton* v. *Hempsted*, 3 Day, 332, 339; *St. John* v. *Dann*, 66 Conn. 401, 407, 34 Atl. 110; *Comstock* v. *Comstock*, 23 Conn. 349, 352. This principle was in 1784 enacted into our statute, now § 4027 of the General Statutes.

Estates tail may indeed be created in this State, and language which would create them at common law will do so here. Our ancient rule and confirming statute simply defined the legal character of such estates. They are estates of inheritance. For their creation by deed it is held that the word "heirs" is indispensable, and that no synonym such as "issue," "descendants," "seed," or "offspring," can supply its place.

This strict rule is relaxed as applied to devises, so that a devise to A and his "issue," or "descendants," or "seed," or "offspring," may suffice to create an estate tail, and one may be created even where words of inheritance are absent, if the testator's intent to that end is apparent. "The testator's intention may be shown by necessary implication, as well as by the express language of the will, so that the essential words of inheritance, though entirely absent, may often be implied, if the testator's manifest intent makes it necessary." Minor & Wurts on Real Property, § 171.

This relaxation, in the case of devises, of the strict rule applicable to conveyances, results from a recognition that in a matter of testamentary disposition the testator's intent should be effectuated. Application of this principle has been made by us upon several occasions when estates tail by implication have been recognized. *Dart* v. *Dart*, 7 Conn. 250, 253; *Hudson* v. *Wadsworth*, 8 Conn. 348, 357; *Williams* v. *McCall*, 12 Conn. 327, 329; *Comstock* v. *Comstock*, 23 Conn. 349, 352; *Turrill* v. *Northrop*, 51 Conn. 33, 36; *Horton* v. *Upham*, 72 Conn. 29, 31, 43 Atl. 492.

In the present instance the word "heirs" does not appear in the thirteenth paragraph of the will until the final limitation over after the provisions in favor of the four nephews and their descendants. That fact, however, is not one, as we have seen, of controlling importance. The controlling fact is the testatrix's intent as to the estate attempted to be created by her, as ascertained from the language of her will and the surrounding circumstances. *Turrill* v. *Northrop*, 51 Conn. 33, 39; *Bullock* v. *Seymour*, 33 Conn. 289, 294. Did she intend that her nephews should take as donees in tail and their descendants by inheritance from their ancestor, or that the nephews should take estates for life and their surviving descendants a remainder over by purchase? If the latter, there was no estate tail. The heirs or issue of a donee in tail take by inheritance only.

The answer to this test question is plainly indicated by the language of the will. The successive conditional devises are made to several nephews, with limitations over upon failure of surviving descendants. Had the will stopped there with a devise of an estate of inheritance absolute, cut down by a later provision for a gift over upon failure of issue, there would be substantial ground for the contention that an estate tail general was created. Of this character are the Connecticut cases already referred to. But the will did not stop there. It did not leave the inheritable estate in the donee to operate in so far as it was not restrained. The testatrix went on to expressly and directly provide for the contingency of descendants surviving, as she also did for the alternative contingency of nonsurvival. She directed that if any son left a descendant the property should be given to such descendant or descendants. Here is language of direct gift in fee simple. The surviving descendants are designated as the beneficiaries of the testatrix's bounty. The indication is

plain that she conceived that she was giving to them directly in the same way that she was giving to other persons named or described in the paragraph and not making a mere provision for a succession in perpetuity by inheritance to that which had been given to an ancestor. The gift is direct and in absolute terms to persons described, and not a provision for a transmission of title to descendants in unending sequence which the law arbitrarily converts into a fee simple in the issue of the first donee. In other words, the testatrix attempted to make the designated descendants her beneficiaries by her own act and not to provide for a beneficiary succession, to which the law, operating contrary to her will, would, for reasons of public policy, give the same effect. The erasure at the end of the thirteenth paragraph, whether it was occasioned by a wish to vest in the descendants an absolute estate, or a desire to avoid a perpetuity, or other reason, emphasizes the fact that the testatrix had in mind a gift direct.

As the final gift over to the heirs of D. C. Rand, Jane S. Smith and Catherine H. Carnahan is void as being in contravention of the statute against perpetuities, we have no occasion to inquire as to the effect of the quitclaim of Catherine H. Carnahan and her children, who proved to be her heirs, as accomplishing a release of an interest of her heirs, had the terms of the will been effective to create one in them. They could take nothing by the will, and there could therefore, be no interest in them to release.

The Superior Court is advised that the defendant, at the time of his said conveyance to the plaintiff, was seized and possessed of the land therein described as of a good, indefeasible estate in fee simple, and that judgment be rendered for the defendant.

In this opinion the other judges concurred.